IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **06-cv-1999-JLK**

**TANIA L. ANDERSON**,

       Plaintiff,

v.

**AMC CANCER RESEARCH CENTER,**

       Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Kane, J.

     Plaintiff Tania L. Anderson asserts claims for age and race discrimination and retaliation against her former employer, Defendant AMC Cancer Research Center (AMC).  AMC has moved for summary judgment on each claim.  For the reasons stated below, I grant AMC's motion.

<u>Background</u>

     The following facts are undisputed unless otherwise stated:

     Anderson is an African-American woman born in 1958.  In 1995 she began working for AMC, which is a small non-profit research institution devoted to reducing the cancer burden in the Rocky Mountain region and in the nation.  Anderson's initial position with AMC was as a telephone interviewer.

     Shortly after Anderson was hired, Dr. Al Marcus, AMC's Director of Community Studies and Behavioral Research, formed AMC's Computer-Assisted Telephone Interviewing Unit (CATI Unit).  Anderson held the position of Telephone Interviewer in the Unit until 1998, when

AMC promoted her to Senior Telephone Interviewer and assigned her some supervisory responsibilities.  Dr. Marcus, who is over 60, was aware of this promotion.

In the summer of 2002, the Associate Director of the CATI Unit, Steve Hines, resigned and Dr. Marcus hired Brenda Kluhsman to replace him.  Dr. Marcus testified that he selected Kluhsman for the Associate Director position because he had found her to be an excellent researcher and project manager in working with her previously and because she had extensive experience in project management, was a stellar graduate student at UCHSC and had taken graduate level course work relevant to the position.  Anderson testified that Hines nonetheless told her he thought it was an "injustice" that AMC had not offered the Associate Director to Anderson.  At this point, Anderson began to suspect that Dr. Marcus was discriminating against her on the basis of race.

A month or two after it hired Kluhsman, AMC promoted Anderson to Senior Manager of the CATI Unit and gave her a twelve percent pay raise.  Dr. Marcus approved the promotion and increase in pay.

In October, 2002, AMC, acting through Kluhsman, hired Tammy Smith, a 29 year old Caucasian female, as a computer programmer in the CATI Unit.  Smith reported directly to Anderson in this position.  Smith had previous experience in computer technology, project management and chemical and environmental engineering, but no experience in computer-assisted telephone interviewing, other forms of interviewing or survey research and methodology.

Shortly after she hired Smith, Kluhsman resigned as the Associate Director of the CATI Unit.  When Anderson learned of Kluhsman's departure, she contacted Dr. Marcus to express an

interest in the position.  Dr. Marcus responded that he did not plan to hire a new Associate Director and would instead play a more active role in the CATI Unit himself.  Ms. Anderson testified that he also urged her to stay with AMC, telling her that she could really make a difference there.

In June 2003, Dr. Marcus gave Anderson her annual performance evaluation, in which he rated her performance as the CATI Senior Manager to be "Outstanding" in almost all categories. Anderson received overall ratings of "Exceeds Requirements," "Good" or "Commendable" in the six annual performance appraisals she received from AMC before 2003.

In approximately June 2003, Anderson notified Dr. Marcus that she was concerned about the possibility that Smith might leave AMC and that her departure might negatively affect an ongoing project and AMC's relationship with clients.  Anderson's concerns were prompted by a self-evaluation form completed by Smith in which Smith stated that while she would like to spend a long time at AMC, she could only foresee doing so if real possibilities for advancement existed.  Anderson also testified that when she met with Smith about the self-evaluation, Smith told her that Dr. Marcus had promised to appoint Smith to the Associate Director post in the CATI Unit.  When Anderson reported Smith's comment to Dr. Marcus, he denied he had made such a promise and said he would talk to Smith.

Shortly thereafter, Dr. Marcus notified Anderson that he had decided to restructure the CATI Unit by dividing it into two departments – Data Collection and Database Administration – in preparation for a pending merger with the University of Colorado.  In connection with the restructuring, AMC promoted Anderson to the new Associate Director of Data Collection position, in which she supervised a project manager and six part-time interviewers.  Smith,

meanwhile, was promoted to Associate Director of Database Administration, in which she supervised a computer programmer.  The restructuring became effective early in 2004.

Anderson testified she was dissatisfied with the restructuring in several respects.  First, she felt Dr. Marcus had undermined her authority by restructuring the CATI Unit and promoting Smith after she had brought her concerns about Smith to his attention.  She also could not understand how Smith could be promoted to an Associate Director position given the short time she had been with AMC, and was unhappy that Smith's new position gave her additional contact with the CATI Unit's clients.  In addition, she was very dissatisfied  that Smith was allowed to hire a new programmer as part of the restructuring, even though AMC had invested money in training Smith as a programmer.  Finally Anderson felt that she alone should have been promoted to Associate Director, with authority over the CATI Unit as a whole.

In August and September 2004 Dr. Marcus began receiving complaints from Anderson's co-workers about communication and interpersonal problems they were having with her. Ultimately, six different AMC employees, including all of the full-time employees in the CATI Unit, complained.  Their complaints included that Anderson was not communicating with co-workers as needed, that she too easily went into crisis mode when problems arose and blamed others instead of seeking constructive solutions, that her management style was based on fear, intimidation and confrontation and that she treated one or more co-workers in a rude and unprofessional manner.

Dr. Marcus also received complaints during this period from two of the CATI Unit's clients concerning problems they had with Anderson's management of their research projects.

Dr. Marcus testified that at least one of these clients requested that Anderson be removed from its project.

Dr. Marcus stated that as a result of these complaints and those he had received from AMC employees he determined that the structure of two co-equal Associate Directors in the CATI Unit was not working.  He therefore decided to restructure the CATI Unit again to promote Smith to Deputy Director of the Unit, while making Anderson one of two project managers within the Unit under Smith's supervision.  Dr. Marcus informed Anderson of this restructuring and her new position on or about October 5, 2004.

On October 15, 2004, Dr. Marcus gave Anderson a written performance review in which he officially informed Anderson of her new position and the reasons for it.  These reasons focused on the complaints about her job performance he had received from AMC employees and clients.  Dr. Marcus' written review also proposed a plan of action for resolving Anderson's performance issues, including encouraging her to attend workshops and seminars relating to her position to provide her with additional opportunities for professional growth and development.  Dr. Marcus did not reduce Anderson's salary in this review or as a result of the restructuring.

Four days later, on October 19, 2004, Anderson filed an internal complaint at AMC alleging Dr. Marcus had discriminated against her on the basis of race in deciding to reassign Anderson to Project Manager and to promote Smith, instead of Anderson, to the position of Deputy Director.  AMC conducted an internal investigation, at the close of which it informed Anderson it could not corroborate any grounds for her complaint.

In July 2005, AMC merged with University of Colorado Health Sciences Center ("University") to address a chronic funding shortage at AMC.  AMC asserts that in anticipation

of the merger it needed to reduce staffing and unnecessary expenditures.  In April 2005, AMC

determined that the remaining workload in the CATI Unit could be handled by a single project

manager.  By that time, Anderson had been removed from the projects of both of the two clients

that had complained of her performance.  The other project manager in the Unit was able to work

on all of the projects in the Unit and made less than Anderson.  According to Dr. Marcus, AMC

therefore decided to terminate Anderson and retain the other, less expensive project manager.

AMC terminated Anderson on April 8, 2005, and has not filled her former position.

Anderson filed a formal complaint with the Equal Employment Opportunity Commission

(EEOC) on April 7, 2005.  After the EEOC informed Anderson of her right to sue, Anderson

brought this action asserting claims against AMC for race discrimination in violation of

42 U.S.C. § 1981(a) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*,

age discrimination under the Age Discrimination in Employment Act (ADEA),

29 U.S.C. §§ 621, *et. seq.*, and retaliation in violation of the ADEA, § 1981 and Title VII.  AMC

has moved for summary judgment on each claim.

<u>Standard of Review</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Adamson v.*

*Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).  A disputed fact

is material if it could affect the outcome of the suit under the governing law.  *Adamson*, 514 F.3d

at 1145.  A factual dispute is genuine if a rational jury could find for the nonmoving party on the

evidence presented.  *Id.*

The moving party bears the burden of showing that no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145.  Where, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden by showing a lack of evidence for an essential element of the nonmovant's claim.  *Id.*  In deciding whether the moving party has carried its burden, I may not weigh the evidence and must view the evidence and draw all reasonable inferences from it in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Adamson*, 514 F.3d at 1145.  Neither unsupported conclusory allegations nor a mere scintilla of evidence in support of the nonmovant's position are sufficient to create a genuine dispute of fact.  *See Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005); *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

Analysis

I.      Discrimination Claims

        A.      Legal framework

The plaintiff in a race or age discrimination case bears the burden of proving, either directly or indirectly, that her employer intentionally discriminated against her.  *Adamson*, 514 F.3d at 1145.  In this case, Anderson relies on circumstantial evidence of discriminatory intent to support her claims of race and age discrimination against AMC.[1]

---

[1]      Anderson, a native of Panama, alleges at one point in her response to AMC's motion that AMC also discriminated against her on the basis of national origin.  Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. (Doc. 56) 12.  Anderson did not plead discrimination on this basis in her complaint, however, and did not argue or present evidence in support of such a claim in her summary judgment briefing.  As a result, no claim for discrimination on the basis of national origin is at issue or will be considered here.

The Supreme Court has established a three-step burden-shifting framework for determining whether a plaintiff's circumstantial evidence of race or age discrimination raises an inference of discriminatory intent sufficient to survive summary judgment. *See McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-04 (1973); *Adamson*, 514 F.3d at 1145. In the first step of the *McDonnell Douglas* analysis, I must determine whether Anderson has presented sufficient evidence to establish a prima facie case of race and/or age discrimination. *See Adamson*, 514 F.3d at 1145. If she meets the burden, the burden shifts to AMC to produce a legitimate, non-discriminatory reason for the challenged action. *Id.* If AMC meets this burden, then Anderson must present evidence from which a rational jury could conclude that AMC's proffered explanation for its actions is a pretext for unlawful discrimination or that Anderson's race or age was a determinative factor in AMC's employment decisions. *See id.* If Anderson meets this burden, then she has demonstrated that a genuine dispute exists on the question of whether AMC intentionally discriminated against her.

B.      Actionable discriminatory acts

In her complaint and response to AMC's motion, Anderson bases her race and age discrimination claims on four separate discriminatory acts:  (1) AMC's failure to promote her to Associate Director of the CATI Unit after Brenda Kuhlsman resigned in October 2002; (2) AMC's failure to promote her to Associate Director of the CATI Unit as a whole during the 2003 restructuring that resulted in her becoming a co-equal Associate Director with Smith; (3) AMC's decision to demote Anderson to Project Manager in October 2004, while promoting Smith to Deputy Director; (4) AMC's termination of Anderson's employment in 2005.

Two of these alleged acts of discrimination, those concerning AMC's failure to promote Anderson in 2002 and 2003, cannot serve as the basis of a discrimination claim because they are time-barred.  Title VII and ADEA both require a litigant to file a charge of race or age discrimination with the EEOC either 180 or 300 days after the allegedly unlawful employment practice occurred.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (Title VII); *Aronson v. Gressley*, 961 F.2d 907, 911 (10th Cir. 1992) (ADEA); 42 U.S.C.A. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2).  Compliance with this requirement is a prerequisite to suit under both statutes.  *Aronson*, 961 F.2d at 911.  The statutory time limit begins to run on the date the employee is notified of an adverse employment decision by the employer.  *Davidson v. Am. Online, Inc*., 337 F.3d 1179, 1187 (10th Cir. 2003).

Anderson filed her administrative complaint with the EEOC on April 7, 2005.  This limits the employment actions for which she may seek relief under Title VII and the ADEA to actions she learned of on or after June 11, 2004, 300 days before she filed her EEOC charge.  Anderson was aware of the 2002 and 2003 employment actions of which she now complains long before this date.  Accordingly, Anderson cannot seek relief under Title VII or the ADEA for these 2002 and 2003 employment events.[2]  *See Morgan*, 536 U.S. at 113; *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006).

Anderson may nonetheless cite these 2002 and 2003 events "as background evidence in support of her timely claims" of discrimination regarding her October 2004 demotion and 2005

---

[2]      Anderson also cannot bring a claim of race discrimination under § 1981 for these 2002 and 2003 actions because the statute of limitations for § 1981 claims is two years.  *See Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995).  Anderson filed this action on October 5, 2006, which means that the statute of limitations bars her from seeking relief under § 1981 for employment actions she knew of before October 5, 2004.  *See id.*

job termination. *Haynes*, 456 F.3d at 1223 (quoting *Morgan*, 536 U.S. at 113). Such background evidence may not, however, establish discriminatory purpose where there is no evidence of such purpose in connection with the employment action for which a timely EEOC claim was made. *See id.* at 1223, 1227; *Tilley v. Denver Business Journal, LLC*, No. 06-cv-00040-LTB-MJW, 2007 WL 3308006 at *9 (D. Colo. Nov. 6, 2007) (plaintiff "cannot use any supposed discriminatory intent by defendant in performing time-barred actions . . . to attach unlawful intent or pretext" to an employment action for which a timely claim was filed).

C.    October 2004 failure to promote Anderson to Deputy Director

Anderson alleges AMC unlawfully discriminated against her on the basis of her race and/or age when it failed to promote her to Deputy Director of the CATI Unit during the October 2004 restructuring.[3] The first step in applying *McDonnell Douglas*' burden-shifting scheme to these claims is to determine whether she has presented sufficient evidence to establish a prima facie case of race or age discrimination.[4] In order to establish a prima facie case on either basis, Anderson must demonstrate that: (1) she was a member of a protected class (*i.e.*, an African-American and/or over the age of 40); (2) she applied for and was qualified for the position of Deputy Director; (3) she was not promoted despite her qualifications; and (4) the position was

---

[3]    I analyze Anderson's age and race discrimination claims with respect to this employment action identically. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

[4]    Anderson's claim could also be analyzed as discriminatory demotion, as Anderson's re-assignment to Project Manager following the elimination of her former Associate Director position can be viewed as both a demotion and a failure to promote her to the newly created Deputy Director position that Smith assumed. To the extent there is any analytical difference between these two perspectives, the difference is immaterial to the outcome in this case. As described below, Anderson ultimately cannot carry her burden of demonstrating a genuine issue of fact that AMC acted, in either regard, with the requisite discriminatory intent.

10

filled or remained open after she was rejected.  *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1306-07 (10th Cir. 2005).  Anderson must raise a genuine issue of material fact on each of these elements to make this showing.  *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005).

AMC contends Anderson cannot establish a prima facie case of race or age discrimination under this test because she was not qualified for the position of Deputy Director as a result of the complaints about her performance as the Associate Director of Data Collection. While there may be merit to this contention, for purposes of summary judgement I will assume Anderson has presented sufficient evidence to create a genuine issue of fact regarding her qualifications for the Deputy Director position, as well as the other elements of her failure to promote claim.

As for the second step of the *McDonnell Douglas* analysis, AMC has presented evidence that Dr. Marcus decided not to promote Anderson as a result of the complaints he had received about her job performance from co-workers and clients.  This evidence satisfies AMC's burden of articulating a legitimate, non-discriminatory reason for its employment decision, and shifts the burden back to Anderson to present evidence creating an issue of fact that this reason is merely a pretext for discrimination on the basis of race and/or age.

To accomplish this task, Anderson must present facts suggesting that AMC's proffered race- and age-neutral reasons for failing to promote her are "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (internal quotation omitted). Doubt that the employer acted for the nondiscriminatory reasons proffered supports an inference

11

that the real reason for the action was invidious discrimination. *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008).  However, "mere conjecture that [the] explanation is pretext for intentional discrimination" is not enough to deny summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Anderson asserts a reasonable jury could find AMC's proffered explanation was pretextual based on a variety of evidence.  After carefully considering the question and the evidence presented, I must disagree.

First, Anderson argues that pretext can be inferred from the fact that much (but not all) of the evidence supporting AMC's asserted, non-discriminatory reasons for not promoting her consists of testimony from an "interested witness," AMC's Dr. Marcus.  Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. (Doc. 56) 15.  Anderson cites no authority supporting the novel proposition that testimony from "interested witnesses" must be disregarded or discredited in considering pretext in the summary judgment context.[5]  This proposition is, in fact, inconsistent with the Supreme Court's direction in *McDonnell Douglas* that the employer be given an opportunity to articulate a legitimate, non-discriminatory reason for the adverse employee action, something that often can only be accomplished through testimony from "interested witnesses" such as the employer's decision-makers.  There is no basis, therefore, to find a genuine issue on pretext or to disregard or discredit Dr. Marcus' testimony on summary judgment simply because he is an "interested witness."

---

[5]     Neither of the cases cited by Anderson support her argument, as both concern the separate and quite different standard for reviewing a jury's verdict on a post-trial Rule 50 motion for judgment as a matter of law.  *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 151 (2000) (cited by plaintiff to support proposition); *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1168 (10th Cir. 2006) (same).

Anderson next asserts that pretext must be inferred because Dr. Marcus used "subjective criteria" in deciding not to promote her.  This argument fails on two counts.  First, the record does not support Anderson's assertion that Dr. Marcus relied on entirely subjective criteria in deciding not to promote her to Deputy Director.  Rather, the undisputed record shows that his decision was supported by objective facts, detailed complaints made by Anderson's co-workers and clients regarding her job performance.  Second, even if it could be said that his decision was based on subjective criteria, "the existence of subjective criteria alone is not considered evidence of pretext; rather, the existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluation standards."  *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007); *see Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1195 (10th Cir. 2006) ("the subjective nature of the evaluation may be a factor to consider in pretext but it ordinarily is not sufficient by itself to establish pretext").  In other words, Anderson must produce evidence of pretext before the use of subjective criteria can support an inference that these criteria were a vehicle for unlawful discrimination.

In somewhat contrary fashion, Anderson next argues that Dr. Marcus' reliance on the co-worker and client complaints against her is evidence of pretext.  Anderson contends this is so because these complaints were too vague to be reasonably relied upon and because Dr. Marcus had an obligation to investigate them more fully to determine whether Anderson's co-workers and clients were themselves motivated by some discriminatory intent.  Neither contention withstands scrutiny.  There is ample evidence in the record, including contemporaneous email messages, documenting the specific, detailed complaints made about Anderson's job performance.  There is also no evidence that Anderson had any reason to question the veracity of

13

the complaints or the motives of the complainants.  In addition, more fundamentally, the question is not whether AMC's asserted reliance on the complaints was "wise, fair, or correct; the relevant inquiry is whether [AMC] honestly believed its reasons and acted in good faith upon them." *Riggs*, 497 F.3d at 1118-19.  Anderson has not presented any evidence that Dr. Marcus did not honestly believe the complaints he received or failed to act in good faith on them.  In sum, nothing about the nature of the complaints or Dr. Marcus' response to them suggests that Dr. Marcus' stated reliance on these complaints in deciding Anderson's position in the restructured CATI Unit was a pretext for unlawful discrimination.[6]

Anderson also asserts that pretext and ultimately discriminatory intent can be inferred from AMC's decision to promote the younger and white Smith to the Deputy Director position, notwithstanding Smith's lack of experience in computer-assisted telephone interviewing and supervising compared to Anderson and differences between Smith's qualifications in survey research and project management as compared to the qualifications of former Associate Director Kluhsman.

Only an "overwhelming merit disparity" between Anderson's and Smith's qualifications might support a finding of pretext *Santana v. City & County of Denver*, 488 F.3d 860, 865 (10th Cir. 2007), and no such disparity has been shown here.  Smith had served in the CATI Unit for two years at the time of her promotion, with increasing levels of responsibility, and had

---

[6]     Anderson's claim that pretext can be inferred because Dr. Marcus did not give her an opportunity to correct her performance problems is not supported by the record, which shows Dr. Marcus did offer Anderson this opportunity, and also is of little probative value on the question of pretext.  That Anderson had previously received positive performance evaluations also has limited probative value on the question of pretext in light of the documented co-worker and client complaints made about Anderson after these evaluations.

supervised at least one employee during much of this period.  Significantly, there is also no

evidence that Smith had been the subject of co-worker and client complaints about her

interpersonal skills and job performance as had Anderson.  This factor alone defeats Anderson's

claim that her greater experience in the CATI Unit makes her so clearly more qualified than

Smith for the Deputy Director position that a reasonable jury could infer discriminatory intent

from the comparison.

In addition, to the extent that there was a change in AMC's selection criteria or

qualification requirements for the position in the interim between Kluhsman's hiring and Smith's

promotion, this change does not, in and of itself, show pretext.[7]  *See Lee v. GTE Florida, Inc.*,

226 F.3d 1249, 1255 n.2 (11th Cir. 2000) (shift in selection criteria not significantly probative of

pretext); *Nichols v. Lewis Grocer*, 138 F.3d 563, 568 (5th Cir. 1998) ("promotion decision is a

dynamic one, and the relative importance placed on various selection criteria cannot be expected

to remain fixed and unyielding").  "[E]mployers, not employees or courts, are entitled to define

the core qualifications for a position, as long as the criteria utilized by the company are of a non-

discriminatory nature."  *Garrision*, 428 F.3d at 937 (internal citation omitted).  As a result, even

assuming that Kluhsman's Associate Director and Smith's Deputy Director positions are

equivalent (something Anderson has not demonstrated), a change in AMC's selection criteria

between Kluhsman's hiring in 2002 and Smith's promotion over Anderson in 2004 is not

_____

[7]     Any differences between Smith's and Kluhsman's qualifications are also immaterial in the absence of evidence that the Smith's Deputy Director position and Kluhsman's Associate Director position are equivalent.  Dr. Marcus in fact testified that the positions were different and required a different skill set.

15

enough, alone or in combination with the other evidence cited by Anderson, to raise a genuine issue of fact regarding pretext.

I am also unpersuaded by Anderson's reliance on cases stating that changes in an employer's explanation for an adverse employment decision may constitute sufficient evidence of pretext to survive a motion for summary judgment.  *See* Pl.'s Br. at 15-16 (citing *Jaramillo*, 427 F.3d at 1311, and *Maschaka v. Genuine Parts Co.*, 122 F.3d 566, 570 (8th Cir. 1997)). While it is quite true that there are some circumstances in which a reasonable jury may infer discrimination from an employer's inconsistent explanations for a challenged employment action, *see Jaramillo*, 427 F.3d at 1311-12; *Nichols*, 138 F.3d at 568, there is simply no evidence before me indicating that AMC has in fact changed its explanation for promoting Smith over Anderson and for reassigning Anderson to a project manager position.  To the contrary, the record shows that AMC told Anderson at the time of these employment actions that its decision was based on the concerns about her job performance raised by her co-workers and clients. Dr. Marcus and AMC have maintained that position throughout this litigation.  The record does not, therefore, support Anderson's assertion of inconsistent explanations by AMC, and the cases cited above are inapposite.

For the reasons stated above, I find Anderson has not carried her burden of raising a genuine issue of fact that AMC's proffered, non-discriminatory reasons for demoting Anderson to project manager and not promoting her to Deputy Director in October 2004 was a pretext for race or age discrimination.  AMC is therefore entitled to summary judgment on her discrimination claims relating to this employment action.

D.      Discharge from employment in 2005

To make out a prima facie case of discriminatory discharge based on race and/or age, Anderson must present evidence sufficient for a jury to find that she:  (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged; and (4) her position was not eliminated after her discharge.  *Adamson*, 514 F.3d at 1150.

AMC argues that Anderson cannot make this showing because it is undisputed that the Program Manager position she held in 2005 was, in fact, eliminated after she was discharged. The Tenth Circuit has held, however, that, while listed as an element of a plaintiff's case, "the fact [that] a plaintiff's job was or was not eliminated after her discharge is not necessarily conclusive of her prima facie case."  *Id.* at 1150-51.  Accordingly, I will assume for purposes of deciding AMC's motion that Anderson has met her burden of establishing a prima facie case of discriminatory discharge.

AMC has produced evidence that it decided to terminate Anderson for a legitimate, non-discriminatory reason: its need to reduce staffing and unnecessary expenditures in anticipation of its merger with the University and its determination that the other project manager in the CATI Unit could, unlike Anderson, work on all projects in the Unit and do so at a lower cost.  Under *McDonnell Douglas*, this shifts the burden back to Anderson to produce sufficient evidence for a jury to find that these reasons were merely a pretext for unlawful discrimination.

Anderson attempts to meet this burden principally by challenging AMC's assertions that it reduced staffing and expenditures in advance of its July 2005 merger with the University. Specifically, Anderson contends she was the victim of a one-person Reduction in Force (RIF), which she asserts gives rise to an inference of discrimination in and of itself.  She also challenges

17

AMC's assertions that it had financial difficulties or actually reduced staffing before its merger with the University.

Even assuming a one-person RIF could, by itself, support an inference of discrimination sufficient to meet a plaintiff's burden to show pretext, Anderson has not presented evidence that she was, in fact, the victim of such a RIF.  Instead, the AMC employee history produced by Anderson in support of this contention actually demonstrates that AMC terminated at least three additional employees in the three or four months before the University merger for the reason of a "Reduction in Force."  It also shows that at least eleven other AMC employees left the company during this period as well, while only three employees were added.[8]  Thus, AMC reduced its staffing during this period by at least twelve through layoffs and attrition.  This evidence does not support an inference that Anderson was targeted for termination in a one-person RIF that was a pretext for unlawful discrimination.

The evidence Anderson produced to demonstrate that AMC was not shrinking its labor force and expenses in anticipation of its merger with the University is also insufficient to raise a genuine issue of fact regarding AMC's asserted reasons for terminating Anderson.  As just noted, Anderson's own evidence establishes that AMC's work force decreased by at least twelve in the months leading up to the July 2005 merger  The financial document relied upon by Anderson, meanwhile, is for the "AMC Foundation," whose relationship to Anderson's employer, the AMC Cancer Research Center, or its CATI Unit, is unclear on its face.  *See* Pl.'s

---

[8]     It is undisputed that none of the new hires assumed any part of Anderson's former duties as a Project Manager in the CATI Unit.  A business decision to hire employees to fulfill needs in one area while downsizing in another area during a RIF is not evidence of discrimination or pretext.  *See Gaffney v. Dep't of Information Tech. & Telecommunications*, 536 F. Supp. 2d 445, 462 (S.D.N.Y. 2008).

Br. (Doc. 56), Ex. D ("AMC Foundation, 2004-2005 Comparison, Fundraising, General & Administrative").  The document also only addresses the Foundation's "Fundraising, General and Administrative" expenses, and the numbers it provides for the 2005 fiscal year (ending 6/30/05) are specifically denominated as "preliminary."  As a result, even viewing the document in the light most favorable to Anderson, the increase in Foundation salaries from 2004 to 2005 shown on the document is not sufficient for a reasonable jury to find that Anderson's employer, the AMC Cancer Research Center, increased salaries during this period and that its statements about the need to reduce staffing and expenditures at the time it discharged Anderson were pretextual as a result.[9]

For these reasons, the circumstantial evidence produced by Anderson, including the evidence and arguments discussed earlier in connection with her failure to promote claim, is insufficient for a reasonable jury to infer that AMC committed unlawful age or race discrimination when it discharged her.  AMC is entitled to summary judgment on Anderson's discrimination claims

## II.    Retaliation Claim

Anderson's final claim is that AMC violated the ADEA, Title VII and § 1981 by retaliating against her because she had opposed employment practices she believed in good faith

---

[9]       In response to Anderson's reliance on the AMC Foundation document, AMC presented unrebutted evidence that the Foundation is, in fact, only a small subset of AMC's overall organization and that the document does not report income and expenses relating to AMC's programs, including its CATI Unit.  *See* Def.'s Reply Br. (Doc. 61), Ex. I (Marcus Aff.) ¶ 3.  It also produced evidence, its Form 990 IRS Returns for FY 2004 and 2005, showing that revenue for the AMC Cancer Research Center decreased by over $2,000,000 during this period, program services expenses (which includes the CATI Unit) decreased by over $275,000 and overall payroll decreased by almost $250,000.  *Id.* ¶ 4 & Att. 1.

constituted race discrimination against her.  Because Anderson again relies on circumstantial evidence in support of this claim, it too is subject to the three-step *McDonnell Douglas* burden-shifting analysis.  *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008) (Title VII and § 1981); *Haynes*, 456 F.3d at 1228 (ADEA).

To establish a prima facie case of retaliation, Anderson must show that a genuine issue of fact exists as to each of these elements of her claim: (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection existed between the protected opposition and the materially adverse action.  *Somoza*, 513 F.3d at 1211-1212 (Title VII and § 1981); *see Haynes*, 456 F.3d at 1228 (ADEA).

Anderson's difficulty here is demonstrating a triable issue regarding the third element, a causal connection between her internal complaint at AMC alleging race discrimination, submitted on October 19, 2004, and her layoff on April 8, 2005, nearly six months later.  "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct followed by adverse action."  *Haynes*, 456 F.3d at 1228 (internal quotation omitted).  However, a six-month gap between the protected activity and the adverse employment action, without additional evidence of causation, is too great to infer retaliatory motive.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (three-month period, standing alone, insufficient to establish causation).

Anderson submits causation is established by additional evidence showing that shortly after she filed her internal complaint, AMC began a retaliatory campaign designed to ultimately

terminate her employment.  "[A] pattern of retaliatory conduct [that] begins soon after the [protected action] and only culminates later in actual discharge" can satisfy a plaintiff's burden to show causation on summary judgment.  *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996).  Anderson claims that AMC engaged in such a retaliatory campaign against her when it demoted her to project manager in October 2004, removed her from two project assignments, moved her to an office away from other members of the department and subjected her to heightened scrutiny by having another employee attend meetings at which Anderson was present to take more detailed notes.

The record does not support Anderson's allegations of a pattern of retaliatory conduct sufficient to establish a genuine issue regarding causation.  First, Anderson filed her internal complaint alleging discrimination on October 19, 2004, *after* she was demoted to project manager on or before October 15, 2004 and her project assignments were changed.  Her demotion and reduced project assignments, therefore, cannot have been caused by her subsequent protected conduct.  *See Kendrick v. Penske Transp. Servs., Inc,*. 220 F.3d 1220, 1234-35 (10th Cir. 2000) (plaintiff could not establish causation when employer decided to discharge plaintiff before plaintiff submitted his complaint).  Anderson also failed to introduce any evidence regarding the alleged change in her office location.  Even if she had, this alleged incident and AMC's decision to have another person take detailed notes at CATI Unit meetings are too trivial, alone or together, to constitute "materially adverse" actions that might dissuade a reasonable worker from making or supporting a charge of discrimination.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 43, 67-68 (2006) (trivial harms, petty slights and minor annoyances that would not deter a worker from complaining of discriminatory conduct do not

21

support a retaliation claim).  As a result, Anderson has not presented evidence of a pattern of retaliatory conduct culminating in discharge or otherwise established the causation element of her prima facie case of retaliation.

Even if I were to find that Anderson had established a prima facie case of retaliation, I would find that she has not met her burden of establishing that the legitimate, non-retaliatory reasons asserted by AMC for her discharge are a pretext for unlawful retaliation.  There is simply no evidence in the record from which this unlawful motive can be inferred.  On either basis, therefore, AMC is entitled to summary judgment on Anderson's retaliation claim.

Conclusion

For the reasons stated above, AMC's Motion for Summary Judgement (Doc. 49) is granted.  Summary judgment shall be entered in AMC's favor and against Anderson on all claims.

Dated this 24th day of July, 2009.

 s/John L. Kane
John L. Kane, Senior District Judge
United States District Court